Federal Public Defender on behalf of Mr. Tyrone Harris. The issue that's been briefed at the direction of the court basically is whether or not there was reasonable suspicion, at least the first issue, reasonable suspicion to seize Mr. Harris. And then secondly, independently, if the community caretaking function allowed that seizure. I would submit that there was not reasonable suspicion because basically according to concurrence in Jones, Judge Loken's possessing a gun in a public place is not a basis for a Terry stop. And that seems inconsistent with what many police officers see, how many police officers do view. But the fact is it's not a basis for a Terry seizure. The courts make a difference that this is a high crime area. You know, if the officers go into, you know, we could all imagine a really high crime area where seeing a gun, they shouldn't act immediately. I think under Terry, all factors are potentially relevant, including the question of whether or not it is a high crime area. I would point out in Jones, that was a high crime area. And despite it being a high crime area, the majority opinion held there was no basis to think it was a gun. But even Judge Loken said, even if it had been a gun, that's not a basis for the Terry seizure. That's Judge Loken's personal view. Some of us might disagree with it. Certainly, certainly. And I don't think it's had the experience with police officers that some of us have had. Certainly. And I'm just responding to, you know, the court's question of whether or not that concurrence. And I understand it's not binding on this court. But I believe if you look at the rationale for it, it really does. It is persuasive. The court's opinion, the seizure in this case is really based on two possible violations of law. One, that it was carrying a concealed weapon. And then two, that it was being. Let me ask you about that. It wasn't concealed. That's why we're here. That's the very first argument. It was in plain sight. The court held it was in plain view. That's the court in the R&R. That's the second base. It's in plain view. So it was not concealed. And secondly, it wasn't really being. What if the officer is well, I'm going to arrest him for a concealed weapon. Maybe the officer was thinking the gun's falling out of his pocket. If he put it back in his pocket, then it's a concealed weapon. But, you know, how do we look. And you get to the, what is it, the community caretaker function. Are we looking at subjective or objective tests here? I think it's before we get their judge, there were a couple of additional points. Not only is it in plain view, I would argue it's not being carried. The person's asleep and he could have been carrying it in his waistband. Then when he goes to nap, he puts it in his pocket. Some of us are hunters. And if we are tired and lay down on a bench and have our shotgun lean in against the bench, that's not a concealed weapon. It's not a concealed. And at that point, I would say it's not being carried either by the person that's taking a nap. But is it being. I'm sorry. What is it being done with? I would argue it's being possessed. It's being possessed. Certainly the person has knowledge. There he has the ability to control it. So it's possessed. But I don't think it's being carried within the meaning of the statute. The second basis for the Terry stop was this. I think of a pellet wisdom is don't try to argue the unarguable. I'm sorry, Judge. The second basis underlying the Terry stop is this idea that there was a reasonable suspicion that he was intoxicated and that it was being handled negligently. First of all, I want to point out the statute requires both. It requires intoxication and negligent handling. Now, the only evidence of intoxication was the fact that the person was sleeping. I'd submit that that alone is not sufficient, especially considering it is at a public transportation facility. It's not uncommon for people to nap or sleep while waiting for the next bus or train or plane, for example. There was no evidence of intoxication offered by any of the officers. That was never articulated. Even if this court finds that sleeping, we find that could be possible. Look at the statute again. It requires negligent handling or otherwise using. I would submit the facts here. Do not establish that he's asleep. The gun is maybe being possessed on his person, but there's no handling of the gun or otherwise using the gun. And keep in mind the statute requires both intoxication, which all we have is a person's sleep, and then secondly, in addition, negligent handling and or use. And that certainly, there's no evidence of that at all. So I would submit there really isn't a basis for the Terry seizure that occurred in this case. What about the sign? This is prohibited on the bus station premises. Doesn't Missouri statute permit merchant or property owner to make that call and to put the signs up and have them enforced? It does, Judge Shepard. Section 571.107 do allow property owners to do that. But I would point out the statute also states that the possession of a conceal and carry on the property or gun for that matter is not a criminal act. And that's straight from the statute. It's not a criminal act. What the property owner can do is ask that person to leave. And if the person refuses to leave, then they can be cited by $100 fine or $100 fine for the first citation. But it's not being there with a gun is not a criminal act. There is no refusal to leave in this case. And I would submit the fact that the statute specifically provides, hey, this isn't a crime. Likewise, that cannot be a basis for the Terry seizure. So certainly, even evaluating all the Let's go to the community caretaking function. It seems to me that an officer in the community caretaking function has a gun hanging out of his pocket. Ultimately, the Fourth Amendment is for reasonableness. They acted reasonably. So why is it not reasonable for an officer under these circumstances to say, well, I better go check this guy out and take the gun until I find out what's going on here? Judge, I believe I would concede under the community caretaking doctrine that that officer has the right to probably seize the gun. I think I would concede that at that point. However, what happens after that? After that, what happens is they seize Mr. Harris. They cuff Mr. Harris. They detain him. They proceed to question him. And certainly after the seizure of that gun, at that point, this officer is no longer acting in the role of a community care, no longer fulfilling the community caretaking function. I believe that is a critical distinction. And although the seizure of the gun might be permissible under the community caretaking doctrine, certainly once that gun is seized, there's no further basis for the seizure. And so then, in retrospect, you would say the officer should have done what? Well, the majority opinion notes this. And Jones, less intrusive means a consensual encounter, questioning the person. And maybe at that point, reasonable suspicion develops for an arrest or seizure. But as Jones indicates, there has to be a crime, reasonable suspicion before the seizure, not after it. And I believe that is a critical distinction. I'm willing to my rebuttal. I have about a minute left. I would like to Let me ask you this. Is this community caretaker function a subjective or objective test? It doesn't seem to be decided. And kind of in comparison to the emergency exception doctrine, because I believe different because I don't believe definitively answered the question. I think Kazada held basically that the officer must have a reasonable belief of emergency, and that must have been motivated. That officer's conduct for our purposes here. I don't believe it matters whether it's objective or subjective, because I think the record is clear that once the gun is seized, the emergency is eliminated. And what happens after that violates the Fourth Amendment. And that cannot be justified under that doctrine. Well, they had the discussion. They had the interview, the conversation, the question about what's your name that might take place at a typical Terry stop. You agree? The only difference is that they handcuffed the man. That's the part that you think is objectionable? I believe the Terry stop, the seizure, the handcuffing was impermissible under the Fourth Amendment, even though the initial seizure of the gun may have been permissible under the community . Not necessarily handed him his gun, Judge Shepard, but awakened him and then proceeded to do what this court allows, a consensual encounter, question and answer. And then maybe that dialogue develops into... That's what happened, isn't it? The only difference you're talking about is he got handcuffed. Is this a 1983 action? No, Judge, not yet. He was seized and detained prior to that questioning. I think the record bears that out. I hear you complain, but what I think is different is he was handcuffed and they were pointing guns at him. But the questioning, I think that you're trying to keep stuff out of court. Wouldn't that have happened anyway? You don't necessarily have to reply to any of those questions, Judge. It's not required. And certainly the fact that someone's handcuffed and guns are drawn makes a person more likely to comply with whatever police authority or police presence is there. Okay, I'll give you a minute. I'd like to begin by addressing the facts in this case that I think are essentially undisputed. In this case, Sergeant McClure and two other police officers responded to the bus station on a 9-1-1 call from an employee of the Greyhound bus station, requesting help. The employee stated that there was a man asleep on the bench with a gun hanging about to fall out of his pocket. And that's the basis of the response. The record is clear that in Sergeant McClure's mind, and under the community caretaking standard, I think it is a reasonable examination, were the facts sufficient to allow him to reasonably believe that there was a public hazard, a public danger, and a need for him to act quickly to abate that danger. And I think in this context, the court could reasonably conclude that the answer is yes. Okay, is this a subjective or objective? Under the community caretaker doctrine, I think it's a reasonable subjective in terms of what did the officer believe, and did that belief motivate his intent to act immediately? Okay, now if that's the case here, he was wrong. He believed, if it's a subjective test, I think you're in trouble. Because he subjectively was going after him to make an arrest for a concealed weapon. It was not a concealed weapon. It was not concealed. And I'm not sure I buy the not carrying argument, but objectively, I would think objectively you could say somebody, yeah, thought there was a danger here and so forth. But your officer didn't do it for that basis. He testified that he did it to arrest him for having a concealed weapon, which it was not. With all due respect, Judge Riley, the officer stated clearly in the record multiple times that his primary purpose in going to the bus station and primary purpose in seizing the gun before awakening the defendant was a safety issue. That was it purely and simply. Again, he responded . . . I thought he testified clearly from the excerpts I read that he was doing this because the man had a concealed weapon. He was doing this because he responded to the station because the employees asked for police response to help. And as the court has noted that there are signs and the law prohibits someone from possessing and carrying a weapon on private property when the private property owners have determined that they don't want guns on their property. But I think the question here is, first of all, when the gun was taken from his pocket, the defendant himself wasn't seized in the context of the law because he was asleep. The question here is the police officer clearly said that when he contacted the employee of the bus station who reported that the gun was falling out, he made the inspection, confirmed the facts, and his first instinct based on what he saw and the need to keep that gun from falling and accidentally discharging was to take the gun. He did say, and I do concede, I will concede this, that he thought that he had . . . the circumstances gave rise to an in that context, Judge, I think the standard is objective. In the community care taking standard, when I said subjective, I meant did he reasonably believe that there was a situation that created an immediate hazard or danger to the public that he needed to abate? He also testified that he had been at the station previously with a partner. They had gotten into a scuffle with another individual. A gun fell out and automatically discharged, injuring the police officer. He also testified that when he saw the gun, it was coming out of the pocket and it was sliding out. It hadn't actually fallen to the ground, but it was in his mind about to fall. So that's what I meant in terms of the subjective standard as well. The case, I think, pretty much lines up, in our view, with the Casada opinion, where the police officer went to the apartment to execute or deliver a custodial order to the occupant. The police officer in that case knew or suspected that the occupant was a female who resided at the apartment. When he arrived at the apartment, the door was ajar. He heard the television playing as well as lights on. And he yelled repeatedly to try to elicit a response from the occupant. And having heard or not gotten a response, he was concerned that the person needed help and was unable to respond. So the court in Casada allowed the police officer permissibly under the Fourth Amendment because it found that his intent was reasonable. His conclusion that the person in the public might need help was reasonable, allowed the police officer to enter the apartment. When there, the police officer saw legs on the ground and saw a rifle, I believe, in that position, did not respond until he removed the firearm from underneath the person's legs. The court in that case, in upholding his action under the community caretaker standard, allowed the subsequent handcuffing of that individual in the apartment and also the admission of the gun under the plain view doctrine because he was later charged with FIP as permissible under the Fourth Amendment. We would argue and urge the court to find that this case lines itself up with Casada. Casada obviously was an entry into a private dwelling. This was an entry into the Greyhound bus station at the behest of the Greyhound employees. And I think it makes common sense that the condition in which that gun was when witnessed by the police officer was a hazard and a dangerous condition and that needed to be abated. With regard to the subsequent handcuffing of the, after the defendant was awakened, we would concede that there was a seizure at that point. The police did have guns on the defendant because they didn't know what or who they were dealing with. It's clear that the bus station had signs posted prohibiting and clearly telling anyone who visited the premises that they were not to carry firearms, that they were subject to search, they were subject to seizure of the firearms. The law would permit that. The Sergeant McClure was there to assist the Greyhound station in compliance with that law. So our view is that the handcuffing was reasonable because as Sergeant McClure said, he didn't know what he was dealing with, did not know whether or not Mr. Harris had other guns concealed on his person. And I would think it's reasonable to argue or infer that someone who would disregard signs telling them that it's against the law to possess a weapon on property might similarly be disobedient toward a law enforcement officer who's charged with enforcing the law. So I don't think it was unreasonable to handcuff the defendant to ask his name for safety reasons, not only for the police officers, but also for the public. In doing that, Judge, out of an abundance of caution, we filed a 28-J letter and we cited the Mendoza case. It's a 1984 case. Again, we think this is the law, the facts in this case lend themselves well to the community caretaking doctrine because the officer responded to the bus station's call for help and the first reaction was to abate that danger, as I've indicated before, because the officer reasonably believed that the gun presented a hazard to himself or danger to himself and the public. But if the court were to conclude that the defendant was subject to an unlawful arrest, our view would be Mendoza stands for the proposition that the handcuffing was unreasonable. The only thing that the police officers discovered after that point was the defendant's identity and his criminal history. Under Mendoza, identity and criminal history, even if an unlawful stop is conceded, which we do not concede, that's not fruit of the poisonous tree. Are there any other questions? I guess you asked the Jones case. Is this in light of Judge Loken's concurrence in the Jones case? We think the facts are distinguishable from the Jones case. This isn't a situation where the police officer had unfettered wishes or designs to handcuff someone and search them, suspecting without reason that they had a firearm or that the law was being violated. Thank you. Mr. Moss, you have one minute. Yes, Your Honor. Your Honors, if I might briefly touch on the authority noted in the 28J letter, I would disagree with the government's burden to show, maybe through some other exception, that they would have discovered those things and    they would have done those things anyway through inevitable discovery. But our position would be that they cannot do that because we don't know what would have happened absent the detention, the handcuffing, the point of a gun, all of the things that amounted to the seizure. So I do believe there's a distinction, and I think, I can't recall the case off the top of my head, but I know this court has even addressed that, that in a situation there is a distinction between suppressing the body of a person and information such as identity and criminal history. So that's the only other thing I'd want to add unless the court has any other questions. Again, we thank you for your arguments and we will take it under advisement and be back in due course.